Our fourth case is 24-2103, Roberts v. Evans. Mr. Gillespie. Thank you, Chief Judge Diaz. Good morning. I'm Reggie Gillespie. I represent the appellant, Justin Evans, and I will join the other lawyers who have told you today it is a privilege to appear before this venerable court. I'm glad to have the chance to do so. There are two basic questions that have to be decided in every qualified immunity case. Those are whether a constitutional right was violated and whether the right so violated was clearly established at the time of the violation. In this case, there was an involuntary commitment order. And when we consider those two issues, do we take the facts as the district court found them, correct? Well, there is case law that says that, Your Honor, but there are other cases that say, for example, the court is not bound by a party's version of the facts. Not a party's version of the facts, the district court's finding of facts. Well, neither the parties nor the court are bound by something that is contrary to the record. And that's the point that we're relying on here in this case. And I'm referring to the Scott case. In the Scott case, the court said that the parties are not, nor is the court, bound by the district court's finding. What the Supreme Court said in Scott was that facts must be, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury would believe it, a court should not adopt that version on the summary judgment motion. In this case, the plaintiff's version is what the court adopted. And our position is that it's a story that is blatantly contradicted by the record, and therefore this court is not bound by it. In what way is it contradicted by the record? It is contradicted by the record in multiple respects. First and foremost, the plaintiff has admitted one of the most fundamental facts of all in this case, and that is that she had no evidence to contradict Captain Parker's description of what happened in his return of service section of the involuntary commitment order. In that return of service, Parker documented what happened as follows. Roberts, the decedent, attempted to kill or cause serious bodily injury to the officers serving the involuntary commitment petition and order, and as a result, the officers responded, resulting in the death of the respondent. The plaintiff testified in her deposition that she had no evidence to contradict what Captain Parker documented in his return of service, Parker's description of what happened. Actually, the plaintiff added in her deposition that she was told that Roberts had attempted to kill the deputies with a machete. The plaintiff gave this testimony— Mr. Gillespie, sorry to interrupt you. Yes, sir. What you just indicated is obviously correct what she said, but could— I don't know if the district court actually engaged with that, but could that be viewed as simply her statement that she personally had no evidence to contradict what the officer had said, but that doesn't necessarily exclude the possibility that there is other evidence in the record that might contradict what the officer had to say, principally the autopsy report, which is, I think, where the district court largely hung its hat on, is the sequence of shots, if you can even call it that, that suggested or a jury might conclude that the officer, in this case, Coral Evans, shot the decedent in the back. And so that's the evidence, even if the plaintiff didn't remember it. And the question is whether that's enough to create a genuine issue of triable fact. Let me answer that, Your Honor, in two parts, if I may. First of all, the plaintiff gave her testimony months after every single officer was deposed, months after the expert reports were submitted in this case, including the forensic pathology expert as well. She's represented by a very able counsel, and at her deposition she did not contest what Captain Parker documented in his report. But what he documented in his report is what he says happened. And to Chief Judge Diaz's point, she wasn't there, so she truthfully testified she couldn't contradict that. Well, yes, Judge Thackert, I'm coming to the rest of your question. In the autopsy report, there's absolutely no finding whatsoever that the findings, the interpretation that the district court gave to the autopsy report, which the plaintiff also gave to the autopsy report, it simply doesn't support those particular findings. For example, the autopsy report nowhere says the plaintiff was unarmed. But that is something that the district court and the plaintiff contend the autopsy report stands for. It does not say that. As a matter of fact, the autopsy report indicates that Roberts died as a result of an armed confrontation with the officers. So it contradicts that. Secondly, with regard to the contention that the shots were fired within eight feet, the autopsy report actually says that the shots were fired from an indeterminate range. It says that to every single one of those shots. Thirdly, the autopsy report indicates where the bullets entered and exited, but it does not interpret where Roberts was facing, where he was going at the time he was shot. As a matter of fact, the physical evidence that's there that is uncontradicted is that Roberts fell backwards and landed on his back and side, and the pictures from the scene, which are in the joint appendix, show he fell backwards, landed on his back and side with his feet facing towards the door. So we submit that the autopsy report, which does not make the findings that the plaintiff contends that it says, that the district court contends that it says, it simply doesn't say that. If the court looks at the summary interpretation at page 546, all it says is the cause of death of Adrian Roberts, a 37-year-old man, is attributed to multiple gunshot wounds, X3, involving the left arm, torso, and neck, resulting in internal injuries to the ribcage, lungs, aorta, and left arm bone with associated significant blood loss. Postmortem examination additionally revealed no evident contributory natural disease or alcohol drug toxicity. The decedent was reportedly fatally shot during armed confrontation with law enforcement, serving involuntary commitment papers involving him. That's the armed confrontation, and that's repeated in the autopsy report. In view of the overall death investigation and postmortem examination findings, the matter of death is classified as homicide. That is the sum, substance, and entirety of the summary of interpretation in this report. Our position is that neither the district court nor a jury nor the plaintiff is qualified to interpret this report in the fashion in which it is being interpreted to defeat summary judgment. And that stands in stark contrast to the opinion of Barbara Wolfe, a forensic pathologist who's done more than 10,000 autopsies. And Dr. Wolfe describes that the injuries are consistent with how Justin Evans and all the other officers who saw it, all the other officers who saw it, that his version and their version of what they saw, what they perceived, is what the autopsy report indicates. And so there is no interpretation that supports the district court's finding. There is only the interpretation that is directly contrary to it, and that interpretation is not controverted, it's not challenging anywhere in the record. Let me say also further. This might be a good summary judgment argument or a good jury argument. I thought you were relying on Scott to try to get around the problem with appealing a denial of summary judgment, and Scott sets a very high bar. It says it has to be blatantly and demonstrably false, right? In that instance, the court had a videotape that showed it was blatantly false, the version of facts that the plaintiff presented. And Scott even distinguished cases relying on documentary evidence and said, you know, this rule, this exception to the rule is not going to apply in most cases, but here there's a video that shows that that version is blatantly and demonstrably false. And how do you get over that? In two ways. First of all, what Scott says is blatantly contradicted by the record, and the record is in this case four officers observed the decedent running at them with a machete over his head. The physical evidence confirms that when he fell, he fell on his back, landed on his back and side, a machete was found, two machetes were found, one within reach, one within his reach. So we also have the perceptions of the officers which must be credited, and I would suggest to the court that the Sigmund case speaks to that. In the Sigmund case, the Chapel Hill police officers who were attempting to take into custody a subject who was intoxicated and wielding a knife, according to them, he was shot and killed. There were three witnesses who gave affidavits that said that he wasn't, he didn't have anything in his hands, he was not a threat at all to any of the officers, and they shot him without justification. Those facts were in the summary judgment record, but what the court did was it credited the officers' perceptions, none of which were contradicted by anything in the record, none of which were, all of which were consistent with one another. And what the court said in Sigmund is that the officers' perceptions cannot be overcome by these witnesses' affidavits, even though they seem factually to be different. What the Sigmund court said is that summary judgment was appropriate in that case, notwithstanding those affidavits that appear to contradict the officers' perceptions. We're on a denial of summary judgment, right? So all we're allowed to look at typically is the question of law. We're not allowed to consider whether the court was correct in finding that there was a dispute of material fact. We have heaps of cases saying that we're limited to looking at whether accepting the facts as the district court found them, right, the plaintiff's version as the district court found it, would that establish qualified immunity? Would there be qualified immunity under that? Is it not a constitutional violation or is it not clearly established? Do you dispute that, that taking the facts as the district court found them, there would be a constitutional violation that's clearly established? If, as the court found, which we disagree with, that as the court said, that the decedent had his back turned, was walking away, and didn't have any weapon, if those are the facts, then, yes, there would be a constitutional violation. But we respectfully submit that those are not the facts, and the record blatantly contradicts them. And furthermore, we submit that these officers' perceptions, which are not contradicted, and, indeed, which are actually corroborated by the physical evidence, are what this court can and should and must rely on. And it's entirely consistent with the Sigmund case for this court to do so. I would also like to turn to the other element of the qualified immunity analysis, and that is whether a right is clearly established. And in that, I would ask the court to consider this, that there is no case by this court. But let me review the involuntary commitment order very quickly. The involuntary commitment order states that to any law enforcement officer, the court orders you to take the above-name respondent into custody within 24 hours after this order is signed and take the respondent for examination by a person authorized by law to conduct the examination. So that is the order in this case, and I respectfully submit that neither this court nor the Supreme Court has ever recognized a clearly established constitutional right to use or threaten force, deadly force, against law enforcement officers who are executing an order commanding them to take a person into custody for a mental health examination. Neither this court nor the Supreme Court has ever so held that that's a clearly established right. And as a matter of fact, in the Rembert case ---- Right, if that's what happened. But that's what the court found was a genuine issue of fact here as to whether, and that's where we find ourselves going back to what Judge Rushing said. I understand that, Your Honor. Let me also, consistent with what I've just stated, is the Rembert case, which says there is no precedent from this court or the Supreme Court that requires an officer to refrain from deadly force when faced with a suspect's aggressive and violent actions because of the possibility that the suspect may be suffering from mental health issues. I recognize that we seem to be going around to the same point, but the point is essential. The point is this, and that is that there is no evidence to contradict the officer's perceptions. They're uniform, they're consistent, and they're also consistent with each other, and they're also consistent with the record. The physical evidence in this case and the other evidence to the contrary is an interpretation of the autopsy report that we submit is not competent. Indeed, that's a question of law for this court to take up. If it's not competent, then it's not sufficient to deny summary judgment in this case. It's not sufficient to refuse qualifying immunity to the officer. So for these reasons, we respectfully submit that this court should, based on the numerous cases that have taken summary judgment and reviewed them in reverse denial of summary judgment, those include the Elliott case, those include the Rembert case, which I just spoke about, those include, of course, Scott, and those include a case from Chappell in the Sixth Circuit. And those cases and six or seven others, including Carraway, which Judge Diaz, I believe you wrote the opinion in that, Chappell, Gooden, Rembert, Signum, as I just mentioned, and Waller, and Anderson v. Russell, all of which are cited in our brief, have all credited officers' perceptions. And at least two of those, Anderson v. Russell in the Waller case, credited those perceptions, even though those perceptions turned out to be mistaken. So we respectfully submit that this court can, should rely on these officers' undisputed perceptions. Thank you, Your Honors. Thank you very much, Counsel, Mr. Coyle. Thank you, Your Honors. May it please the Court, John Coyle on behalf of Appellee Sparrow Fisher-Roberts. The case law of the Supreme Court in this circuit is very clear. We can only deal with discrete cases. We can only deal with discrete issues of law and interlocutory appeal. In Hensley X. Rel., North Carolina v. Price, this court specifically said that on appeal, the court cannot credit defendant's evidence, weigh the evidence, or resolve factual disputes in defendant's favor. That's explicitly what Appellant is asking to do here. The only discrete issue of law is once we take the facts as the district court found them, which is that Adrian Roberts was unarmed, his back was turned, and he was walking away from the officers, whether that spells out a violation of clearly established constitutional law. You heard from Appellant's counsel himself, it does. There's no dispute on this issue. As Your Honors noted, this sort of issue of revisiting the facts that Appellant tries to do based on Scott really isn't appropriate here. Scott is very much a very specific case where there was video evidence of the entirety of the incident that dispelled any disputes that may have existed. Appellant also cites to a Fourth Circuit case- The factual scenario that the district court found. What's your response to that? I don't really see how we get there. The autopsy report is much longer than what was quoted by counsel. If we go to pages 543 to 546 of the joint appendix, it shows you entrance wounds, bullet trajectory, how it moves, and most helpfully on joint appendix page 547, there's a diagram. And that diagram shows that all three entrance wounds of the bullets are in Mr. Roberts' back. So they certainly have presented expert evidence that there is some feasible way that the body could be contorted and comply with Mr. Evans' version of events. But it's very easy for a jury, and certainly the district court here, to determine that these three entrance wounds and their directional path forward in the body demonstrates that his back was turned when he was shot. That coupled with the testimony- McCoy, I'm sorry to interrupt. But the district court also relied on the autopsy report to find not just that, but that when he was shot, the decedent was about eight feet away and that he was unarmed. So obviously, I don't see how that autopsy report could lead to those conclusions. So what else in the record supports those findings? The distance is, I believe, based largely on pictures coupled with their testimony, Mr. Evans' testimony that he was outside or basically in the door jamb versus how far away Mr. Roberts fell. There was also some discussion in various deposition testimony about the distance between five and eight feet, which generally what the deposition testimony said. As to the unarmed aspect, Captain Potter testified at his deposition. He was stationed at the window, which is to the right of the door where entry was made. He testified that he was giving the signal for when entry would be forced. He waited until Mr. Roberts had nothing in his hand, had his back turned, and he was walking away from the door for them to signal entry. There's also deposition testimony that from the time in the forced entry to the first shots was one to two seconds. So we do have evidence, testimonial evidence, from the captain saying he had nothing in his hand, was walking away when forced entry happened, gunshots happened two seconds later, three entry wounds in the back. All of this supports the district court's finding that there is a material dispute of fact that when read in the light most favorable to the plaintiff, that he was unarmed, he was walking away, and he was shot in the back. Was it that same officer who then said that he then saw the scene turned back around and looked like he might have had something in his hand? He does give that testimony, Your Honor, but there's such a short time period that a jury can credit or discredit that testimony. And that testimony is easily discredited when you look at the autopsy with the entrance wounds all three across Mr. Roberts' back. So what we have here is a material dispute of fact, and what we're doing right now is dancing with material disputes of fact, something that the Supreme Court in this circuit has said we're not allowed to do. Only in situations where there's video evidence that makes it very clear what happened, or like in Elliott versus Levitt, plaintiff has no evidence at all, only their conjecture about what happened, can we then say that it is an abstract issue of law. There is no abstract issue of law. The question here is whether he was unarmed and walking away or whether he was attacking the officers with a machete, and that dispute is material, and the district court found it to be material, and there is no jurisdiction to review here. Unless the court has further questions, I'll yield back my time. Thank you very much, Mr. Coyle. Thank you. I want to ask the court to consider the Elliott versus Levitt case, a case from this court from 1996. In that case, there was no evidence to demonstrate the existence of a genuine issue of material fact. Consequently, the officer's appeal for denial of summary judgment based on qualified immunity was properly before this court. In that case, Judge Wilkinson noted that there was, the district court considered there being an issue of fact. The court looked at the evidence, looked at what was, that is, the evidence in the record, this court did, and found that the plaintiff did not meet its summary judgment response burden because it did not come forward with evidence to show a genuine issue of material fact. Summary judgment, there are still requirements that a party must meet to survive a motion for summary judgment. It can't simply rest on its allegations of its pleadings alone. In this case, Justin Evans made a motion for summary judgment, which he supported by evidence in the record. It was a properly made, properly supported motion for summary judgment, and that does not entitle the plaintiff to simply rely on allegations, insinuations, innuendo, and interpretation of an autopsy report that simply isn't supported by the report. So in this situation, summary judgment should have been granted and would be entirely appropriate. I want to also point out once again that the officer's perceptions are what this court can and should rely on, and there are seven or eight cases in this circuit alone that deal with that, and that's important because that's what we have here is we have the officer's perceptions as to what occurred, and these perceptions are backed up by the fact that the machetes were found near his body, that he fell backwards and landed on his back, that he fell facing forward, and Captain Parker testified it wasn't contradicted that when that batting round hit the door the first time, he turned around and ran towards the door with something in his hand over his shoulder. That was at the first strike, but that didn't open the door. The second strike is what opened the door, and that's when the incident occurred, where ultimately he continued coming forward, and that's when he was shot, and all these officers saw him coming towards them and saw him with a machete, which was found at the scene. The autopsy report doesn't contradict that. What we have is a situation. Can I ask a follow-up question? Yes, sir. Judge Rushing was asking when you first came up to the podium about the competing standards here, so you quite correctly indicated that in a typical summary judgment motion, when the case is up on appeal, you know, we do take the facts in the light most favorable to the non-moving party, but if there's no evidence in the record to support those facts, then we don't, you know, we don't credit those, but the problem here is you've got a qualifying immunity motion at the interlocutory appeal stage, which imposes, I think, superimposes an even stricter standard on an appellate court, with respect to findings of fact that a district court might make wrong or right, and you may end up winning this case at summary judgment on final judgment or at trial, but you see what my point is, there's two different standards here that you have to overcome, and I wonder whether you overcome both of them. Your Honor, may I speak to that in two ways? First of all, the Scott case, Supreme Court says the summary judgment practice does apply. Secondly, Elliott v. Levitt says summary judgment apply, and in Elliott v. Levitt in particular, because the plaintiff had failed to meet his burden of showing an issue of fact that the party moving for summary judgment, that the officer seeking summary judgment qualified immunity, this court held that that was insufficient to satisfy his summary judgment burden and reversed the trial court and granted summary judgment for the officer. We respect that this case lands directly within Elliott v. Levitt, and Elliott v. Levitt requires this court to apply the same summary judgment standard that applies to other cases that Scott applied, and then applying that, this court should reverse the trial court's denial of summary judgment. Therefore, we ask that this court reverse the trial court's denial of summary judgment. All right. Thank you very much, Mr. Gillespie. I want to thank both counsel for their fine arguments this afternoon. It looks like it's afternoon. My colleagues will come down and greet you, and then we'll adjourn court for the day.  This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, Stephanie D. Thacker, Allison J. Rushing